UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE JONES

-------------------------------------------------------------- X

JOSEPH STEVENS & COMPANY, INC.

07 CV 3385

                                        Petitioner,

-against-

DAVID CIKANEK,

                        Respondent.

-------------------------------------------------------------- X


**MEMORANDUM OF LAW IN SUPPORT
OF JOSEPH STEVENS & COMPANY, INC.'S
APPLICATION TO VACATE THE ARBITRATION AWARD**


NIXON PEABODY LLP
Attorneys for Petitioner
Joseph Stevens & Company, Inc.
437 Madison Avenue
New York, New York 10022
(212) 940-3000


Martin P. Russo
Alison B. Cohen
Tamar Y. Duvdevani

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
JOSEPH STEVENS & COMPANY, INC.

                            Petitioner,

-against-

DAVID CIKANEK,
                            Respondent.
------------------------------------------------------------------ X

### MEMORANDUM OF LAW IN SUPPORT
### OF JOSEPH STEVENS & COMPANY, INC.'S
### APPLICATION TO VACATE THE ARBITRATION AWARD

NIXON PEABODY LLP
Attorneys for Petitioner
Joseph Stevens & Company, Inc.
437 Madison Avenue
New York, New York 10022
(212) 940-3000

Martin P. Russo
Alison B. Cohen
Tamar Y. Duvdevani

PRELIMINARY STATEMENT ........................................................................ 1

FACTS ........................................................................................................ 2

I.    The IRA Account ................................................................................ 2

II.   The Trust Account ............................................................................. 2

III.  The Arbitration .................................................................................. 3

IV.  The Award ......................................................................................... 8

ARGUMENT ............................................................................................... 8

I.    THE STANDARD GOVERNING VACATur of ARBITRATION AWARDS ....... 8

II.   THE ARBITRATION PANEL ACTED IN MANIFEST DISREGARD OF THE
LAW IN RENDERING ITS AWARD TO RESPONDENT DAVID CIKANEK ............ 9

III.  THE PANEL EXCEEDED ITS POWER IN AWARDING DAMAGES ON
BEHALF OF THE TRUST BECAUSE THE TRUST DID NOT FILE A CLAIM
AGAINST JOSEPH STEVENS AND DID NOT SUBMIT TO ARBITRATION .......... 13

IV.  THE ARBITRATION WAS FUNDAMENTALLY UNFAIR BECAUSE JOSEPH
STEVENS WAS DEPRIVED OF ITS RIGHT TO BRING A COUNTER-CLAIM
AGAINST THE TRUST AND A CROSS-CLAIM AGAINST CIKANEK FOR HIS
ACTS AS TRUSTEE ........................................................................................ 16

CONCLUSION ............................................................................................. 18

Pursuant to 9 U.S.C. § 10, Petitioner Joseph Stevens & Company, Inc. ("Joseph Stevens"), through its attorneys, submits this memorandum of law in support of its application to vacate the arbitration award rendered in the arbitration between David Cikanek and Joseph Stevens & Company, Inc., Kevin Brody, Leonard Joseph Inserra, and Ross Inserra, NASD Arbitration No. 06-1868.

## PRELIMINARY STATEMENT

The arbitration award in favor of David Cikanek is the result of arbitrators exceeding their power and manifestly disregarding the law. The claims filed by David Cikanek were styled in his individual capacity. David Cikanek had only one account at Joseph Stevens as an individual. The trading in that account over five years involved less than $2,000 and resulted in a loss of approximately $1,200. There were two trades. One sell. One buy. And commissions of $325. Nothing more. Yet, the Panel awarded $47,500 in compensatory damages and $166,250 in punitive damages. The only explanation for those numbers is that the Panel must have relied on evidence relating to a different account. That, in fact, is exactly what happened. The Panel considered evidence of the account of a non-party to the arbitration and awarded damages to David Cikanek. Despite objections from Joseph Stevens and a full explanation of the law, the arbitrators (two of which are practicing attorneys) chose to disregard the law, improperly consider evidence, and make an irrational award. As set forth more fully below, the law is clear that this Court must vacate the unlawful award.

**FACTS**

I.    The IRA Account

David Cikanek ("Cikanek") opened an IRA account with Joseph Stevens in November 2000. (Russo Decl.,[1] Ex. A, p. 67; Ex. B.). At that time, and throughout his relationship with Joseph Stevens, Cikanek represented that he was a sophisticated investor with an annual income of more than $100,000, and a net worth of more than $1,000,000. (Ex. A, pp. 104-05; Ex. M). On November 17, 2000, assets consisting of two stock positions with an approximate value of $17,000 were transferred into the IRA account. (Ex. B). Within thirty days, the market for these securities fell, and the value of the account was less than $2,000. By the end of December, 2000 – 45 days after being transferred to Joseph Stevens, the existing position recovered a bit, but was only worth $4,510.22. (Exs. C and D). From November 2000 through June 30, 2006, there were only two transactions in the account: a sale of Globalnet for $1625.97 and a purchase of Portal Software for $1808.50. (Ex. E). The total commissions and fees charged on these trades, the only ones charged during the life of the account, amounted to $325. (*Id.*). On June 30, 2006, Cikanek transferred all positions out of his IRA account. At that time, the value of the assets was approximately $1,165.42. (Ex. F).


II.    The Trust Account

Cikanek also controlled and directed the David M. Cikanek Living Trust (the "Trust") which was formed in September 2000. (Ex. G). Cikanek named himself trustee of the Trust, and continued in that role through at least March 23, 2007. (Ex. A, pp. 93;

---

[1]    Unless otherwise indicated, references to exhibits are to those attached to the April 27, 2007 Declaration of Martin P. Russo ("Russo Decl.").

Ex. G). The beneficiaries of the Trust are Cikanek's sisters and their children. (Ex. G; Ex. A, pp. 93-94). In November 2000, Cikanek caused the Trust to open an account with Joseph Stevens and transfer assets into the account. As is required by securities industry rules, a separate account was opened for the Trust to maintain the integrity of its distinct legal identity. (Ex. A, p. 92). In contrast to the IRA account, the Trust account had periods of active trading and significant losses (a large portion of which were due to the decline in value of stocks purchased at another firm) while at Joseph Stevens. (Ex. H). All of the trades conducted in the Trust were either authorized or ratified by Cikanek as trustee. (Ex. A, pp. 99-102). Even after experiencing losses, Cikanek exercised his judgment as trustee to transfer additional assets into the Trust account. (Ex. H).

III.    The Arbitration

In or about April 2006, Cikanek commenced an NASD arbitration against Joseph Stevens and his former brokers for losses he allegedly sustained at Joseph Stevens and another broker-dealer. (Ex. I). At the time he filed the statement of claim, Cikanek individually submitted to arbitration and executed a Uniform Submission Agreement. (Ex. J). As was required by the rules, Joseph Stevens executed a Uniform Submission Agreement consenting to arbitrate with Cikanek individually. (Ex. K). At no time did the Trust, either in its name or by Cikanek as trustee, file an arbitration against Joseph Stevens. (Russo Decl., ¶ 15). Similarly, at no time did the Trust, in its own name or by Mr. Cikanek as trustee, execute a Uniform Submission Agreement. (Russo Decl., ¶ 16). Joseph Stevens, therefore, did not (as it was not required to) execute a Uniform Submission Agreement consenting to arbitrate with the Trust. (Russo Decl., ¶ 17).

At the hearing of this matter, Cikanek's counsel announced in his opening statement that he intended to introduce evidence relating to the trading and losses in the Trust, and that he would seek damages based upon the activity in the Trust account. Before opening, Joseph Stevens' counsel objected as follows:

> Before I open, I didn't object during counsel's opening statement because it's not permitted and it's rude and it breaks the flow, but I do object to some of the evidence he's claimed he's going to show you based on the fact that [it relates] to the Cikanek Living Trust which does not have a claim in this action. I move to strike those portions of the opening that relate to the Cikanek Living Trust. This action was brought by Mr. Cikanek individually … [B]ut the Cikanek living trust did not bring a claim in this case nor did it sign a submission agreement. Illinois [Statutes 760 I.L.C.S. 5/4] basically says that only a trustee has the power to commence litigation on behalf of a trust. The [Re]statement Second of Trusts which has been cited in many cases here in Illinois says it's the trustee who must bring the claim on behalf of the trust and it's only the trust that can recover [] – and that includes grantors are not permitted to bring a [] claim on behalf of the trust nor are the beneficiaries of the trust permitted to bring a claim on the trust except for certain special circumstances which are not met here and I'll cite for you [Godfrey v. Cayman, 2000 U.S. District Lexis 18, 13; Pierce v. Chester Johnson Electric Corp., 117 Illinois Appeals 3rd, 867; Levinfield v. Clinton, 1986 U.S. District Lexis 27, 109 and U.S. v. $2,767,202.27 , 2006 U.S. District Lexis 47, 833], all of that law as well as the [R]estatement of [T]rust sections 177, 192 and 282 …. In this case, the Cikanek Living Trust has beneficiaries that are not Mr. Cikanek. The beneficiaries are various brothers and sisters and their progeny and so Mr. Cikanek is not even the beneficiary of the trust but seeks here apparently to recover individually for a trust asset that being a claim a trust owns. Importantly, [] the exclusion … of the Cikanek Living Trust would not, in fact, materially affect this case because the bulk of the losses that Mr. Cikanek suffered were with respect to his individual accounts which were at LCP and those losses occurred primarily between [] April of 2000 and September of 2000. It was in September of 2000 that Mr. Cikanek created his trust. At the same time at LCP, he had an IRA account which suffered something like several hundred thousand dollars worth of losses. That IRA account went to Joseph Stevens and did, in fact, suffer losses at Joseph Stevens and so the preclusion of the Cikanek Living Trust evidence will not in any way prevent this case from going forward. It would simply provide Joseph Stevens the due process of law and the reason why I say that is because the Cikanek Living trust did not submit to arbitration, Joseph Stevens was unable to bring claims against the Cikanek Living Trust as a trust entity for a debit that they had incurred and was forgiven by Joseph Stevens in the amount of $40,000 and, in addition, Joseph Stevens was unable to cross-claim against Mr. Cikanek for [contribution relating to] his breach of the fiduciary [duty] of care. As a trustee,

4

he owed a duty of care to the trust and to protect the assets of the beneficiaries and so I ask you at this point to strike any portion, without specifics, of the opening that relate to that evidence and to going forward issue a ruling which precludes Mr. Sugarman and Mr. Cikanek from introducing evidence regarding the Cikanek Living Trust account which is not at issue in this case.

(Ex. A, pp. 17-25). In response, Cikanek's counsel argued that the motion was based on a "technical issue" which he could cure by amending his pleadings and submitting a submission agreement on behalf of the Trust. (Ex. A, pp. 21-23) ("we'll move to amend our pleadings and include the trust as a claimant and we'll submit a submission agreement on behalf the trust and Mr. Cikanek as the trustee"). Claimant never moved to amend the claim and the Trust never submitted a submission agreement. Instead, Claimant's counsel urged the panel to ignore the "legal technicality" as follows:

> Mr. Russo [] points out why the motion should be denied []. It suggests we bring another claim against Joseph Stevenson [] for the Cikanek living trust. The evidence and the testimony would be all the same, so he basically wants us to duplicate our efforts twice just as a matter of some technicality. It doesn't make any sense. That's what arbitrations are about. They're supposed to avoid all of the legal technicalities that Mr. Russo is trying to raise and allow a party to present his case and present his evidence not to have to come here and then file the same claim again because the issue has supposedly been joined because I made an opening statement and then have us to introduce the same testimony over again. It's very simple. If the panel is concerned about [their] not being [a party] technically, the living trust [] can amend, we'll submit a submission agreement. The same evidence would be presented if we would bring another claim which would just be duplicative and a waste of everybody's time and effort, so I, again, suggest that the motion should be denied.

(Ex. A, p. 24-25)[2]. Joseph Steven's counsel corrected the record as follows:

---

[2] Notably, despite his acknowledgement that the Trust had never submitted to arbitration and that Cikanek did not bring the case as "trustee," counsel for Cikanek did not amend the Statement of Claim or submit a Uniform Submission Agreement on behalf of the Trust.

> That is factually incorrect. The evidence with respect to the Cikanek Living
> Trust involves different trades, different trading [patterns], different time
> periods. It's not the same evidence that would be introduced with respect to the
> IRA and also I'd like to point out that what Mr. Sugarman basically just did was
> say to you this is arbitration so ignore the law, it doesn't matter that this claimant
> didn't bring a claim against them, just bring it in now and let's have some quick
> justice here. [I]t's manifest disregard to the law if you do it.

(Ex. A, pp. 25-26). Without consulting the other arbitrators, the chairman of the

panel deferred ruling on the motion until after the evidence was admitted. (*Id.*)

At that point, Joseph Stevens' counsel objected and made the following record:

> … [I]f you're going to make us go forward, I need the opportunity to amend my
> answer to assert a counterclaim and a cross-claim, so I mean you can't go
> forward on the evidence with respect to one side without permitting me to go
> forward with the evidence on the other side. The issue has been joined with
> respect to the individual account. If now there is even the chance that at some
> point later on the panel might decide that with respect to the Cikanek Living
> Trust that you're going to accept the evidence, then [Joseph Stevens] will have
> been injured because I will not have been able to assert my counterclaim nor my
> cross-claim and so I urge you to consult with the full panel and to make a ruling
> either at this time or if you cannot do that to adjourn and seek having the parties
> submit briefs or something like that because it's just not fair to Joseph Stevens
> from a due process standpoint for us to have to go forward without asserting our
> claims as they could have been asserted had the Cikanek living trust submitted a
> uniform submission agreement and agreed to be party to this action.

(Ex.A, pp. 32-33). The chairman not only refused to entertain the motion and the request

for adjournment – effectively denying them -- but inappropriately failed to consult the

other panel members in violation of the NASD Rules. (Ex. A, p. 33; Ex. L ("All rulings

and determinations of the Panel shall be by a majority of the arbitrators.")) Instead, the

chairperson forced Joseph Stevens to open and defend against evidence relating to the

Trust. Counsel for Joseph Stevens objected as follows when the first evidence specific to

the Trust was offered:

> I'd just like to note for the record my continuing objection to evidence with
> respect to the Cikanek Living Trust, [which] is not a party to this action.

(Ex. A, p. 268). The chairperson granted a standing objection. (*Id.* ("We'll consider that you have a standing objection to all evidence with respect to the trust.")).

Thereafter, the Panel accepted summary analysis and computations of trading data, account statements and confirmations relating to the Cikanek Living Trust account. The evidence having been presented, Joseph Stevens had no choice but to cross-examine the witnesses and present contradictory evidence regarding the Trust account in addition to the IRA account.  In his closing, counsel for Joseph Stevens again addressed the issue of the impropriety of introducing evidence relating to the Trust as follows:

> With respect to the Cikanek Living Trust, … [i]t should be disregarded or at least should be considered as not being relevant to Mr. Cikanek's claim here. Now, the relationship in this arbitration is contractual and there was no submission agreement from the Cikanek Living Trust. [It has] no claim here. There is no evidence of any assignment of the Cikanek Living Trust claim to Mr. Cikanek and they had the opportunity to present that but they didn't.  There is evidence of the following in the record.  We have the trust document in the record which shows that the trust exists.  We have the statements in the record which show that the account was held in the name of the trust.  We had the expert for the other side testified that the trust is a separate legal entity.  We had the trust document which identifies that the beneficiary is third parties, not Mr. Cikanek.  We have the trust document that says the trustee must bring the action on behalf of the trust.  We have no evidence in this case presented by Mr. Cikanek that he is in fact bringing this claim on behalf of the trust and again no evidence of an assignment.  [] The losses [in the Cikanek Living Trust Account were] suffered by the trust and not by David Cikanek individually the claimants in this case.  And so it's a matter of law Mr. Cikanek cannot recover for those trust losses.  As a matter of fact, he has not proven that he personally suffered any injury when that trust entity lost money.  That does not deprive David Cikanek of seeking losses for activity.  There's a David Cikanek account at LCP.  There's an IRA account at LCP.
> There's an IRA account here.

(Ex. N).

IV.    The Award

On March 30, 2007, the NASD served the Arbitration Panel's Award. (Application to Vacate Award, Ex. 1). The Panel awarded Claimant David Cikanek $47,500.00 in compensatory damages and $166,250.00 in punitive damages. (*Id.*).

## ARGUMENT

I.    THE STANDARD GOVERNING VACATUR OF ARBITRATION AWARDS

Review of an arbitration award is governed generally by the Federal Arbitration Act, which provides that "an arbitration award may be vacated if: (1) the award was procured by corruption, fraud or undue means; (2) the arbitrators exhibited 'evident partiality' or 'corruption'; (3) the arbitrators were guilty of misconduct; or (4) the arbitrators exceeded their power." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Savino*, 06 Civ. 868, 2007 U.S. Dist. LEXIS 23126, at *17 (March 23, 2007) (citing 9 U.S.C. § 10). "In addition, the Court of Appeals has recognized that an arbitration award may be vacated if it is rendered in 'manifest disregard of the law.'" *Id.* (quoting *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 201-203 (2d Cir. 1998)). *See also Hakala v. Deutsche Bank AG,* No. 01 Civ. 3366, 2004 U.S. Dist. LEXIS 8297, at * 2 (S.D.N.Y. May 11, 2004) (An award may also be vacated based on the arbitrators' manifest disregard of the law, manifest disregard of the evidence, or violation of well-established public policy). Finally, pursuant to 9 U.S.C. 10(a)(3), an arbitration award may be vacated due to a lack of "procedural due process" or if the decision rendered is fundamentally unfair and consequently prejudiced the losing party. *See In re Tempo Shain Corp. v. Bertek,* 120 F.3d 16, 20 (2d Cir. 1997); *Hough v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 757 F. Supp. 283, 292 (S.D.N.Y. 1991).

In the instant action, the Arbitration Panel acted in manifest disregard of the law, exceeded its powers, and violated Petitioner's due process rights when it heard and considered evidence relating to the Trust account and issued an award in favor of Cikanek in the amount of $47,500.00 in compensatory damages and $166,250.00 in punitive damages.

II.    THE ARBITRATION PANEL ACTED IN MANIFEST DISREGARD OF THE LAW IN RENDERING ITS AWARD TO RESPONDENT DAVID CIKANEK

A court may vacate an award based upon manifest disregard of the law where it finds that "(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 202 (2d Cir. 1998) (citing *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 821 (2d Cir. 1997), *cert. denied*, 139 L. Ed. 2d 639, 118 S. Ct. 695 (1998)). In this matter, the arbitrators acted in manifest disregard of the law when they allowed Cikanek, in his individual capacity (not as a trustee of the Trust), to present evidence and recover for damages allegedly sustained in the Trust account.

The Statement of Claim and the Uniform Submission Agreement filed in this case were on behalf of Cikanek individually. Joseph Stevens filed an answer and prepared a defense to the individual claims of Cikanek, not the Trust. At the hearing, Joseph Stevens timely objected to the presentation of evidence regarding the Trust account. (Ex. A, pp. 17-25). Joseph Stevens' counsel, citing to the relevant and well-settled Illinois law, informed the arbitrators that David Cikanek could not bring a claim in arbitration in his name against Joseph Stevens for any losses to the Trust account. (*Id.*).

9

In Illinois, a trust is considered a separate legal entity. *See Pierce v. Chester Johnson Electric Co.*, 117 Ill. App. 3d 867, 868 (App. Ct. Ill. 1983) ("a written trust in Illinois possesses a distinct legal existence which is recognized by statute"). By statute, the trustee, in his representative capacity, is the <u>only</u> party who may bring a claim for damages on behalf of the trust. 760 Ill. Comp. Stat. 5/4 (2007); 760 Ill. Comp. Stat. 5/4.11 (2007). Specifically, the Illinois Compiled Statute states that the trustee has the power to "compromise, contest, prosecute or abandon claims or other charges in favor of or against the estate." 760 Ill. Comp. Stat. 5/4. Both federal and state courts in Illinois have long recognized that the trustee is the only party with legal standing to bring suit on behalf of the trust. *See Godfrey v. Kamin*, No. 99-C-3230, 2000 U.S. Dist. LEXIS 18213, at *12 (N.D. Ill. Dec. 14, 2000) ("'a trustee is the only one who has the legal right to sue'") (quoting *Mosay v. Buffalo Bros. Mgmt.*, 20 F.3d 739, 742 (7th Cir. 1994)); *Pierce*, 117 Ill. App. 3d at 868 ("trustees possess a specific statutory power to sue in a representative capacity on behalf of a trust"). Moreover, the trust document governing the Trust explicitly states that only the trustee may file a claim on behalf of the Trust. (Ex. G). All of this information was produced to the Panel.

Here, Cikanek brought a claim in arbitration against Joseph Stevens as an individual, and not in his representative capacity on behalf of the Trust account.[3] As a

---

[3] Although Cikanek was the grantor of the trust, A grantor of a trust has no standing to bring a claim on behalf of a trust and cannot receive any award of damages to the trust. *See U.S.A. v. Two Million Seven Hundred Sixty-Seven Thousand Two Hundred and Two Dollars and Twenty Seven Cents ($2,767,202.27)*, No. 03-1289, 2006 U.S. Dist. LEXIS 47833, at *5-6 (C.D. Ill. July 13, 2006) (finding that the grantor of a trust lacked standing to bring a claim on behalf of the trust or to recover losses on an investment made by the trust); *Levenfeld v. Clinton*, No. 83-C-3677, 1986 U.S. Dist. LEXIS 27109 (N.D. Ill. April 7, 1986).

consequence, he lacked the requisite standing under Illinois law to pursue any claims for damages to the Trust account. Indeed, Cikanek's counsel acknowledged this bar to recovery which he mischaracterized as a "legal technicality" and admitted that the Trust had neither brought a claim nor filed a Uniform Submission Agreement. (Ex. A, pp. 24-25). In the face of the well established law and the admissions of Cikanek, and after admitting that the law had been made clear, the chairman allowed all the presentation of evidence regarding the Trust and awarded damages on that basis.

The Panel was aware that David Cikanek, as an individual, lacked any standing to bring suit on behalf of the Trust and that he failed to bring the claim in arbitration against Joseph Stevens in his capacity as the trustee of the Trust account. Joseph Stevens' counsel directed the arbitrators to the governing law which prohibited the award of alleged damages incurred by the Trust to Cikanek and maintained a running objection to Cikanek's presentation of evidence relating to the Trust . (Ex. A, pp. 17-25). Moreover, the arbitrators were aware that the beneficiaries of the Trust were persons other than Cikanek who had no representation at the hearing. (Ex. A, pp. 93-94; Ex. G). Nevertheless, the arbitrators fashioned an award for damages to the Trust and allowed Cikanek to recover them personally.

The IRA account – the only Joseph Stevens account in Mr. Cikanek's name – was transferred to Joseph Stevens from another firm with approximately $17,000. Due to market forces, the price of its positions fell substantially in the first 45 days. The entire trading history of the IRA account during the five years it was at Joseph Stevens consisted of two trades (a sell and a buy) involving the same $1800 and commissions totaling $325. (*See* Ex. E.) There was no evidence presented at the hearing to

demonstrate churning, excessive commissions, unauthorized trading, breach of contract,

breach of fiduciary duty, fraud, failure to supervise or any other misconduct with respect

to the IRA account. Indeed, neither of the two trades in the IRA account were identified

as problematic in the Statement of Claim. (*See* Ex. I.) As a consequence, there was no

basis to award any damages based on the trading activity in the IRA account.[4] Even,

assuming *arguendo*, that such evidence existed, the loss in the IRA based on the one

stock recommend for purchase would be the difference between its purchase price of

$1808.50 and it value upon transfer of $634.40, for a total of $1,174.10. Even if one

were to include the commissions, the total would only be $1499.10. Moreover, even if

one were to blame Joseph Stevens for the sudden loss in value of the positions purchased

at a prior brokerage firm – which one should not – the loss to the Trust was only

$15,803.20. Nevertheless, the arbitrators awarded Cikanek $47,500 in compensatory

damages, and $166,250 in punitive damages. Viewed in a vacuum, the award is at best

---

[4] "Compensatory damages are such as will compensate the injured party for the injury sustained, and nothing more." BLACK'S LAW DICTIONARY, (4th ed. 1968); *see also* BLACK'S LAW DICTIONARY (7th ed. 1999) (defining "actual damages" and noting that they are "also termed 'compensatory damages'"). The theories of compensatory damages in securities arbitration categories generally fall under five categories: (1) the out-of-pocket theory, which compensates a customer of all out of pocket losses (the difference between the fair value of all that the purchaser received and the fair value of what he would have received had there been no fraudulent conduct); (2) the benefit of the bargain theory which compensates a customer with the amount an investment would have been worth if the representations by the broker were true (given if the customer can show reasonable certainty what the specific price promised was); (3) the well-managed account theory, which measures the difference between how the account performed during the period of alleged misconduct to how it would have performed had it been invested consistently with the customer's objectives; (4) disgorgement, which compensates the customer when a wrongdoer has been enriched from his misconduct (i.e. excessive commissions); and (5) rescission, which seeks to put the customer in the position he would have been in had the fraud not taken place. *See* SECURITES ARBITRATION PROCEDURE MANUAL § 6-8 (3rd ed. 1998) (and cases cited therein).

irrational. However, when viewed in light of the arbitrators' behavior in this case, it is

clear that the award is based upon their consideration of evidence regarding the Trust.

Consequently, the award should be vacated because pursuant to Illinois law. David

Cikanek cannot recover damages that should rightfully belong to the Trust and the Panel

acted in manifest disregard of the law when it entered the award.


III.    **THE PANEL EXCEEDED ITS POWER IN AWARDING DAMAGES ON
        BEHALF OF THE TRUST BECAUSE THE TRUST DID NOT FILE A
        CLAIM AGAINST JOSEPH STEVENS AND DID NOT SUBMIT TO
        ARBITRATION**

Section 10(a)(4) of the FAA provides that an arbitration award may be vacated

"where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). "The Second Circuit

has explained that when a petitioner relies on Subsection 10(a)(4), "'[the] inquiry . . .

focuses on whether the arbitrators had the power, based on the parties' submissions or the

arbitration agreement, to reach a certain issue, not whether the arbitrators correctly

decided that issue."'" *Ruei-Chan v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 04 Civ.

488, 2004 U.S. Dist. LEXIS 18594, at *27 (S.D.N.Y. Sep. 8, 2004) (quoting *Westerbeke

Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 220 (2d Cir. 2002)).

An arbitration panel exceeds it power if it determines the rights or obligations of

non-parties to the arbitration. *See, e.g., Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330

F.3d 843, 846 (6th Cir. 2003) (citing *Orion Shipping & Trading Co. v. Eastern States

Petroleum Corp. of Panama*, 312 F.2d 299, 301 (2d Cir. 1963)); *Techcapital Corp. v.

Amoco Corp.*, 99 Civ. 5093, 2001 U.S. Dist. LEXIS 2822, at *14 (S.D.N.Y. Mar. 16,

2001) ("As the Intervenors correctly argue, arbitrators exceed their authority when they

determine the rights and obligations of one who is not a party to the arbitration

proceeding."); *Bowen v. 39 Broadway Assoc.*, 91 Civ. 4673, 1992 U.S. Dist. LEXIS 3935, at * (S.D.N.Y. Apr. 1, 1992) ("'A decision whether parties other than those formally signatories to an arbitration clause may have their rights and obligations determined by an arbitrator when that issue has not been submitted to him is not within the province of the arbitrator himself but only of the court.'") (quoting *A/S Ganger Rolf v. Zeeland Transportation, Ltd.*, 191 F. Supp. 359, 363 (S.D.N.Y. 1961)) (both relying on *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp. of Panama*, 312 F.2d 299).

"'Arbitration is contractual by nature – 'a party cannot be required to submit to arbitration any dispute which he has not agreed to submit.'"" *Schaad v. Susquehanna Capital Group*, 2004 U.S. Dist. LEXIS 15772, at *12 (S.D.N.Y. Aug. 10, 2004) (quoting *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)). As such, "a party may not be compelled to arbitrate with another party unless it agreed to such arbitration." *Donel Corp. v. Kosher Overseers Ass'n of Am.*, 92 Civ. 8377, 2001 U.S. Dist. LEXIS 2314, at *10 (S.D.N.Y. March 9, 2001) (citing *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986)).

The Sixth Circuit's decision in *Nationwide* is instructive. In that action, Nationwide commenced an arbitration against Home. As part of its ruling, the arbitration panel ordered Nationwide to reimburse a non-party to the arbitration. Nationwide subsequently filed a motion in district court to vacate the award. The district court vacated the award in part on the ground that the Arbitration Panel exceeded its authority by directing that payment be made to a third party. *Nationwide*, 330 F.3d at 845. The

Court agreed with the district court that the arbitrators lacked the power to make an

award that vested any rights in a non-party to the arbitration:

> An arbitration panel may not determine the rights or obligations of non-parties to the arbitration. *See Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1256 (7th Cir. 1994); *Int'l Brotherhood of Elec. Workers, Local No. 265 v. O.K. Elec. Co.*, 793 F.2d 214, 216 (8th Cir. 1986) order payment directly; *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp. of Panama*, 312 F.2d 299, 301 (2d Cir. 1963). In *NCR Corp. v. Sac-Co, Inc.*, 43 F.3d 1076 (6th Cir. 1995), we held that an arbitrator exceeded his authority by ordering payment of punitive damages to non-parties. In that case, the arbitrator erred by creating legal rights in the recipients of the punitive damage award, all of whom were non-parties to the arbitration. In the instant case, Home and Nationwide agree that CIGNA and its affiliate, AISUK, are non-parties to the contract and to the arbitration. Thus, the arbitration award exceeds the panel's authority.

*Id.* at 846-47. *See also, e.g., Intercity Co. Establishment v. Ahto*, 13 F. Supp. 2d

253, 261 (D. Conn. 1998) (Court states in dicta that it would have been "improper" had

the arbitration panel awarded claims against a third party who had not signed the

Submission Agreement.)

In this case, the Arbitration was brought pursuant to the contract between Cikanek

individually (IRA) and Joseph Stevens. It is undisputed that the Trust did not file an

arbitration against Joseph Stevens and had never executed a submission agreement

agreeing to participate in the arbitration. It is also undisputed that Joseph Stevens *never*

signed a submission agreement in an arbitration with the Trust. As discussed above, the

arbitrators in this case awarded damages allegedly incurred by the Trust to Cikanek

individually. In doing so, the arbitrators effectively determined the rights of a non-party

and assigned the damages to Cikanek. Similar to Nationwide, Joseph Stevens did not

agree to have the arbitrators consider the non-party's claim and the arbitrators exceeded

their power when they made the award.  Consequently, as in *Nationwide*, the arbitration award should be vacated.

IV.    **THE ARBITRATION WAS FUNDAMENTALLY UNFAIR BECAUSE JOSEPH STEVENS WAS DEPRIVED OF ITS RIGHT TO BRING A COUNTER-CLAIM AGAINST THE TRUST AND A CROSS-CLAIM AGAINST CIKANEK FOR HIS ACTS AS TRUSTEE**

Parties to an arbitration must be given a fundamentally fair hearing.  "The mandate for fundamental fairness is found in § 10(a)(3) of the [Federal Arbitration] Act," *Home Indem. Co. v. Affiliated Food Distribs.*, 96 Civ. 9797, 1997 U.S. Dist. LEXIS 19741, at \*9 (S.D.N.Y. Dec. 12, 1997), and courts will hear evidentiary challenges to arbitral awards under section 10(a)(3) where the decision appears fundamentally unfair. *See In re Tempo Shain Corp. v. Bertek*, 120 F.3d 16, 20 (2d Cir. 1997); *see also, e.g., Int'l Longshoremen's Ass'n v. West Gulf Maritime Ass'n*, 605 F. Supp. 723, 727 (S.D.N.Y.), *aff'd*, 765 F.2d 135 (2d Cir. 1985) ("[A]n arbitrator's ruling on procedural issues will not be overturned . . . unless it had the effect of denying the parties a fundamentally fair hearing, or was otherwise an unreasonable decision that prejudiced the rights of a party.").  "A fundamentally fair hearing requires that the parties be permitted to present evidence and cross-examine adverse witnesses." *Kaplan v. Alfred Dunhill of London*, 156 L.R.R.M. 2080, 1996 U.S. Dist. LEXIS 16455, at \*14 (S.D.N.Y. 1996).

As explained in Point III above, the Trust did not submit to arbitration with Joseph Stevens.  Since the Trust was not a party, Joseph Stevens did not assert its viable counter-claim against the Trust: losses stemming from a $41,000 debit in the Trust account in 2001.  Similarly, because there was no claim and, therefore, no possible

16

recovery by the Trust, Joseph Stevens could not assert a contribution[5] cross-claim against Cikanek for his breach of fiduciary duty of care and for fraud.  As a trustee, Cikanek owed a fiduciary duty of care to the Trust.  It is clear from the evidence that Cikanek breached this duty many times in many ways; one of which was by continuing to trade in the Trust account after significant losses and continuing to send money to the broker to make those trades.  (*See* Ex. H.)  It is likewise clear from the evidence that Cikanek defrauded Joseph Stevens in his capacity of trustee of the Trust when he submitted false information on the new account form and the private placement submissions.  Because the Trust was not a party to the Arbitration, Joseph Stevens was prevented from making these cross-claims.  (*See* Exs. I; J; K; Russo Decl ¶¶ 16-17.).

At the hearing, when Cikanek sought to introduce evidence regarding activity and losses incurred by the Trust, Joseph Stevens objected and sought to exclude the evidence. At that point, counsel for Cikanek offered to amend the Statement of Claim and have the Trust submit to arbitration.  In response, counsel for Joseph Stevens raised the issues of counter-claims and cross-claims and the need to amend.  These arguments fell on the deaf ears of the chairman (who failed to consult with the other arbitrators), but were not lost on Cikanek – who then intentionally did not amend the Statement of Claim or cause the Trust to submit to arbitration.  The arbitrators did not require that the Trust submit to

---

[5] "'The theory of contribution at common law is that one who is compelled to pay more than his aliquot share of an obligation upon which several persons are equally liable is entitled to contribution from the others to obtain from them payment of their respective shares.'"  *Too, Inc. v. Kohl's Dep't Stores, Inc.*, 01 Civ. 8200 (VM), 2003 U.S. Dist. LEXIS 2268, at *8 (S.D.N.Y. Feb. 14, 2003) (quoting *Green Bus Lines v. Consolidated Mut. Ins. Co.*, 74 A.D.2d 136, 426 N.Y.S.2d 981, 989 (App. Div. 2nd Dep't 1980)).

arbitration, and simply ignored Joseph Stevens' request for leave to amend[6] its answer
and its request for an adjournment.  As a result, Joseph Stevens was left in an
fundamentally inequitable position – unable to assert counter-claims or cross-claims, but
forced to address prejudicial evidence relating to a non-party.  With Joseph Stevens at an
unfair disadvantage, Cikanek's counsel promoted theories of liability which almost
exclusively related to activity in the Trust account because there was nothing to pursue
with respect to the IRA account.  The arbitrators accepted all of this evidence, without
permitting Joseph Stevens and opportunity to pursue its claims.  In doing so, the
arbitrators denied Joseph Stevens  fair hearing.

## CONCLUSION

Based on the foregoing, Petitioner Joseph Stevens respectfully requests that this
Court vacate the arbitration award rendered in Matter of the Arbitration between David
Cikanek and Joseph Stevens & Company, Inc., Kevin Brody, Leonard Joseph Inserra,
and Ross Inserra, NASD Arbitration No. 06-1868, or, in the alternative, remand it for
clarification of the basis of the compensatory and punitive damages.

---

[6] Leave to amend "shall be freely given when justice so requires."  Fed. Rule Civ. Proc.
15(a).  By ignoring Joseph Steven's request to amend the answer, the chairperson
essentially refused to grant the motion without offering an explanation.  "Outright refusal
to grant the leave without any justifying reason for the denial is an abuse of discretion."
*Min Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002).

Respectfully submitted,

Dated: April 27, 2007              NIXON PEABODY LLP
       New York, New York


By: _____
    Martin P. Russo (MR-4134)
    Alison B. Cohen (AC-7702)
    Tamar Y. Duvdevani (TD-7603)
    437 Madison Avenue
    New York, New York 10022
    Tel: (212) 940-3000
    Fax:  (212) 940-3111


    Attorneys for Petitioner
    Joseph Stevens & Company, Inc.

19