UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X
JOSEPH STEVENS & COMPANY, INC.

                        Petitioner,

                                                    07 CV 3385
                                                    (BSJ)

            -against-

DAVID CIKANEK,
                        Respondent.
--------------------------------------------------------------- X


# MEMORANDUM OF LAW IN FURTHER SUPPORT OF
# MOTION TO VACATE ARBITRATION AWARD
# AND  IN OPPOSITION TO
# CROSS-MOTION TO DISMISS
# FOR LACK OF PERSONAL JURISDICTION


                                    NIXON PEABODY LLP
                                    Attorneys for Petitioner
                                    Joseph Stevens & Company, Inc.
                                    437 Madison Avenue
                                    New York, New York 10022
                                    (212) 940-3000


Martin P. Russo
Alison B. Cohen
Tamar Y. Duvdevani

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ....................................................................................................... 1

I.    The Arbitration Award Must Be Vacated ................................................ 1

II.   Personal Jurisdiction over Cikanek is Proper in New York .................... 3

   A.  Cikanek Had Sufficient Contact With New York to Confer Jurisdiction ........... 3

III.  Transfer of Venue from the U.S. District Court for the Southern District of New York to the Northern District of Illinios is Innapropriate ............................... 10

CONCLUSION .................................................................................................... 13

## PRELIMINARY STATEMENT

Joseph Stevens & Co., Inc.'s ("Joseph Stevens") motion to vacate must be granted because David Cikanek ("Cikanek") does not even contest the fact that the arbitration panel exceeded its power and acted in manifest disregard of the law which was clearly presented at the hearing. Unable to address the merits of Joseph Steven's motion, Cikanek attacks the petition on two misguided procedural grounds – lack of personal jurisdiction and *forum non conveniens*.

As is set forth fully below, Cikanek's arguments are devoid of factual and legal merit. Cikanek had more than sufficient contacts with New York to be subject to long arm jurisdiction. Had counsel reviewed the transcript of the arbitration hearing prior to making Cikanek's cross-motion, he would have discovered the many contacts which give this Court jurisdiction over the Cikanek. He did not. Moreover, this Court is a proper forum for the proceeding and a transfer is inappropriate. Petitions to vacate arbitration awards do not proceed as ordinary litigations and are normally resolved on the initial motion. Given the availability of electronic filing, the supposed burden placed on Cikanek is minimal. Accordingly, Cikanek's cross-motion should be denied in its entirety.

Joseph Steven's respectfully requests that the Court enter an order vacating the arbitration award.

## ARGUMENT

I.    THE ARBITRATION AWARD MUST BE VACATED

Cikanek does not dispute that the arbitration award in his favor is the result of arbitrators exceeding their power and manifestly disregarding the law. We respectfully refer the Court to Joseph Stevens' moving brief for a full exposition of the facts and law set forth therein. For the Court's convenience, however, the following is a brief summary of the facts:

1

The claims filed by David Cikanek against Joseph Stevens were styled in his individual capacity. David Cikanek had only one account at Joseph Stevens as an individual. The trading in that account over five years involved less than $2,000 and resulted in a loss of approximately $1,200. There were two trades. One sell. One buy. And commissions of $325. Nothing more. Yet, the Panel awarded $47,500 in compensatory damages and $166,250 in punitive damages. The only explanation for those numbers is that the Panel must have relied on evidence relating to a different account controlled by Cikanek. That, in fact, is exactly what happened. The Panel considered evidence of the account of a non-party to the arbitration and awarded damages to David Cikanek. Despite objections from Joseph Stevens and a full explanation of the law on two occasions, the arbitrators (two of which are practicing attorneys) chose to disregard the law, improperly consider evidence, and make an irrational award.

Because he had no basis to contest these facts, Cikanek hoped to avoid the merits by cross-moving to dismiss for lack of personal jurisdiction. Cikanek does not dispute any of the facts or arguments Joseph Stevens set forth in its petition because he cannot. Nothing in his papers addresses the law or the facts relevant to the arbitration award. He does not dispute that he initiated the arbitration as an individual, rather than in his capacity as trustee on behalf of the trust. He also does not dispute the black letter law relied upon by Joseph Stevens which says that an action on behalf of a trust must be brought by the trustee in his capacity as trustee. Most importantly, however, Cikanek does not even dispute that counsel for Joseph Stevens presented the law to the panel, that the panel understood it, and that the panel chose to ignore the law in rendering its award. Consequently, this Court must vacate the arbitration award.

II.    PERSONAL JURISDICTION OVER CIKANEK IS PROPER IN NEW YORK

A.    Cikanek Had Sufficient Contact With New York to Confer Jurisdiction[1]

Cikanek's cross-motion to dismiss for lack of personal jurisdiction is baseless because of his repeated contact with New York which makes him a proper subject of long arm jurisdiction. Jurisdiction in this matter is based on diversity of citizenship.  In an action based on diversity grounds, the law of the state where the action is commenced determines whether the federal court has personal jurisdiction over the parties.  *See, e.g., D.H. Blair & Co., Inc. v. Gottdiener,* 462 F.3d 95, 104 (2d Cir. 2006); *Picard v. Elbaum,* 707 F. Supp. 144, 145 (S.D.N.Y. 1989). Here, the personal jurisdiction is governed by the New York Civil Practice Law and Rules Section 302.  *See Id.*  The relevant section of the New York CPLR states:

> (a) Acts which are the basis of jurisdiction.  As to a cause of action arising from any of the acts enumerated in this section a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> (1) transacts any business within the state.

CPLR § 302 (a)(1) (2007).  A court may exercise personal jurisdiction over an out-of-state party if the party transacts business within the state of New York and the claim arises from those business contacts.  *See, e.g., D.H. Blair & Co., Inc.,* 462 F. 3d at 104.  "A claim 'arises from' a particular transaction where there is 'some articulable nexus between the business transacted and the cause of action sued upon.'"  *Sole Resort, S.A. De C.V. v. Allure Resorts Mgt., LLC,* 450 F.3d

---

[1]    Cikanek submitted his motion to dismiss without reviewing the arbitration tapes or the court reporter's transcription. (We know this to be true because he requested them from Nixon Peabody the night before he filed the motion).  In proceeding in this manner, he has wasted this Court's resources with an uninformed and inaccurate submission.  He has also caused Joseph Stevens to incur additional attorneys' fees in responding to the frivolous cross-motion.  We respectfully request that the Court order Cikanek to pay Joseph Stevens' attorneys' fees associated with responding to the jurisdictional arguments.

100, 103 (2d Cir. 2006) (quoting *McGowen v. Smith*, 52 N.Y.2d 268, 272 (1981)) (finding that the New York contacts underlying a contract that gave rise to an arbitration have an articulable nexus with or a substantial relationship to a challenge to the arbitrator's award). To determine whether the party transacted business in New York, the court must look to the totality of the circumstances to determine whether a party has "purposely availed himself of the privilege of conducting activities within New York and thereby invoked the benefits and protections of the its laws." *D.H. Blair & Co., Inc.*, 462 F. 3d at 104 (quoting *Bank Brussels Lambert v. Fiddler Gonzolez & Rodriguez,* 171 F. 3d. 779, 787 (2d Cir. 1999)). The application of CPLR § 302(a) meets due process requirements, and therefore, satisfies the constitutional requirements of personal jurisdiction. *Id.* at 105.

In New York, "the fact that the non-domiciliary was never physically present in New York is not controlling" in determining whether personal jurisdiction exists. *Picard*, 707 F.Supp. at 145. New York courts have found personal jurisdiction over a party where the party never physically entered the state but conducted all business through the telephone and mail. *See, e.g., Picard*, 707 F.Supp. at 144; *Triad Securities Corp. v. Manufacturers Indemnity & Insurance Co. of Am.*, 93 Civ. 8019, 1994 U.S. Dist. LEXIS 9230 (S.D.N.Y. July 8, 1994); *L.F. Rothchild, Unterberg, Towbin v. Thompson*, 78 A.D.2d 795 (First Dep't 1980). These cases are instructive since the contacts of the out of state parties with New York are similar to Cikanek's contacts with the state. "[T]he proper focus is whether the totality of the circumstances [] demonstrates that the defendants 'purposefully avail[ed themselves] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws.'" *Picard,* 707 F.Supp. at 145, (citing *McKee Electric Co. v. Rauland-Bourg Corp.*, 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 38 (1967)) (citations omitted).

In *L.F. Rothschild*, the First Department sustained the lower court's finding of personal jurisdiction over an Alabama businessman who never entered New York state, but conducted all transactions in his New York securities account by telephone and mail. 78 A.D.2d 795. There, the Alabama defendant held an investment account with the plaintiff and one of its stockbrokers which were both located in New York. He conducted securities transactions through the stock broker in New York by telephone and mail alone. He also sent checks, securities, and an option agreement to the plaintiff in New York. The First Department ruled that these activities rendered personal jurisdiction over the Alabama defendant proper. In ruling, the court found that the Alabama defendant engaged in 25 securities transactions in his account in a four month period and the option agreement provided that New York law would apply. *Cf. L.F. Rothchild v. Thompson*, 89 A.D.2d 540, 542, 452 N.Y.S.2d 630, 631 (1st Dep't 1982), aff'd mem., 59 N.Y.2d 651, 463 N.Y.S,2d 197(1983) (holding that one isolated purchase of stock was not sufficient to confer jurisdiction, but noting that there would be "little doubt" that personal jurisdiction would be justified had a long-term account been involved).

In *Picard*, the District Court recognized that while jurisdiction is generally not found in New York based on telephone contacts alone, it has long been recognized that personal jurisdiction is acquired where a party maintains an ongoing investment account in New York and directs the activity in that account by telephone. *Picard,* 707 F.Supp. at 147. The defendants were Connecticut residents who sent a $10,000 check to Bloom in New York for investment purposes. *See id* at 146. Later in the relationship, Bloom convinced the defendants to reinvest the money in an account in New York for the purposes of investing in securities. *See id.* As it turns out, Bloom never really opened the account or invested the money. Nevertheless, during the two year business relationship that ensued, the defendants (who never met the plaintiff in

New York) had multiple contacts with plaintiff in New York by letter or over the telephone. *See Id.* The defendants believed that they maintained the ongoing investment account and used the plaintiff's investment services in New York. Ultimately, the defendants requested that their investments be liquidated and received a check from Bloom which was comprised of funds he had stolen from others. A court appointed receiver (Irving Picard) later filed suit in New York to recover the funds returned to the defendants. The court found that the defendants engaged in purposeful and systematic business activity in New York (even though much of it never occurred) and held that they had fair warning that their activity could subject them to jurisdiction in New York. Accordingly, the court found that personal jurisdiction over the defendants in New York was proper. *See Id.* at 149.

In *Triad Securities Corp.*, the court found personal jurisdiction in New York proper even though only two telephone calls were made between the parties. 1994 U.S. Dist. LEXIS 9230, at *7. The defendants opened an investment account with the plaintiff in New York for the purpose of trading securities on the American Stock Exchange. During the one year period that followed, the defendants engaged in four securities transactions. The plaintiff sent the defendants trade confirmations and account statements reflecting these transactions. The court found that the defendants conducted business in New York through these activities, which were sufficient to subject them to personal jurisdiction in New York.

Here, like in *L.F. Rothchild, Picard* and *Triad Securities Corp.*, Cikanek purposefully engaged in systematic business in New York. The following facts are indisputable. For many years, Cikanek had an investment account with Fidelity. (Cohen Decl., Exhibit A, p. 49, lines 7 - 18). In early 2000, Cikanek transferred $800,000 from a Fidelity account to an account held with LCP Capital. (Cohen, Decl., Exhibit A, p. 51, lines 23 – 25; Exhibit A, p. 62). LCP Capital

was a brokerage firm located in New York and Ross Inserra was the New York broker

responsible for Cikanek's account. (Cohen Decl., Exhibit G). In opening his account with LCP

Capital, Cikanek signed a customer account agreement and sent it to Inserra in New York.

(Cohen Decl., Exhibit B, p. 9). For approximately six months, Cikanek engaged in voluminous

trading in the LCP account. He lost approximately $600,000 by September of 2000. (Cohen

Decl., Exhibit A, p. 103, line 11 – p. 104, line 8; Exhibit F). In or about November of 2000,

Inserra left that brokerage firm and became employed by Joseph Stevens in New York. (Cohen

Decl., Exhibit A, p. 104, lines 9 – 13; p. 115, lines 15 – 19). Cikanek filled out paperwork and

transferred his account, and a newly created Living Trust account, to Joseph Stevens in New

York. (Cohen Decl., Exhibit A, p. 87, lines 14 – 18, p. 90, line 24 – p. 91, line 11, p. 116, line 24

– p. 117, line 7). When he opened his account at Joseph Stevens, Cikanek signed a new account

form and sent it to Joseph Stevens in New York. (Cohen Decl., Exhibit A, p. 104, lines 20-23).

The new account form contained language stating that all controversies would be resolved by

arbitration conducted in accordance with the laws of the state of New York. (Cohen Decl.,

Exhibit C). Cikanek also signed a margin agreement and sent it to Joseph Stevens in New York.

(Cohen Decl., Exhibit A, p. 106, lines 24 – p. 107, line 24). That margin agreement contained

similar language regarding the resolution of controversies in arbitration conducted in accordance

with the laws of the state of New York. (Cohen Decl., Exhibit D). Cikanek also reviewed and

sent a private placement investor questionnaire to Joseph Stevens in New York. (Cohen Decl.,

Exhibit B, pp. 1-2; Exhibit E).

Cikanek called Inserra "constantly" during the six years he had accounts with Joseph

Stevens to discuss the trading that was occurring in the accounts. (Cohen Decl., Exhibit A, p. 64,

lines 15 – 23; Exhibit B, p.8). He received trade confirmations from Joseph Stevens for each of

the hundreds of trades made in the accounts.  (Cohen Decl., Exhibit A, p. 99, lines 19 - 23).

Cikanek also sent money to New York to fund the account.  On at least one occasion, he sent

$60,000 to Joseph Stevens in New York. (Cohen Decl., Exhibit A, p. 72, lines 20-24).   After

Inserra was terminated from Joseph Stevens (indicted for securities fraud at LCP Capital),

Cikanek sent more money to Inserra in New York to invest.  (Cohen Decl., Exhibit A, p. 122,

line 25 – p. 123, p. 25).  Cikanek also transferred all of the money from his Joseph Stevens

account to Inserra in New York to invest in a private placement.  (Cohen Decl., Exhibit A, p.

123, line 2 – p. 124, line 15).   Based on the foregoing contacts, personal jurisdiction in New

York is proper.  The totality of the circumstances demonstrates that Cikanek purposefully availed

himself of the privilege of conducting activities within New York for more than six years.

     Moreover, since the arbitration proceeding is based upon Cikanek's claim that Joseph

Stevens and a New York broker (Inserra) allegedly mishandled his accounts (breach of fiduciary

duty, negligence, fraud) in New York, the statement of claim itself supports personal jurisdiction.

By his own pleading, Cikanek has established a sufficient nexus between his business activity in

New York and the claim to allow this Court to exercise personal jurisdiction over him for the

purposes of vacating the arbitration award.  *See e.g., D.H. Blair & Co., Inc. v. Gottdiener*, 462

F.3d 95, 105 (2d Cir. 2006) (in an action to vacate an arbitration award, the court found personal

jurisdiction in New York over an out of state party where the party held an active investment

account in New York and the party's arbitration claim arose out of actions by the securities

brokers that took place in New York); *Sole Resort, S.A., De C.V. v. Allure Resorts Mgt., LLC*,

450 F.3d 100, 104 (2d Cir. 2006).

     The cases cited by  Cikanek  in support of his motion are distinguishable and should not

be relied upon.  Unlike Cikanek, the respondent in *L.F.Rothschild, Unterberg, Towbin v.*

*McTamney*, 59 N.Y.2d 651 (1983) never signed any account agreements opening an account with the brokerage firm and only made <u>one</u> telephone call to New York regarding <u>one</u> stock transaction. Here, Cikanek signed a new account form and sent it to Inserra in New York while he was a broker at LCP Capital. When Inserra moved to Joseph Stevens, Cikanek signed both a new account form and a margin agreement with Joseph Stevens and sent those documents to New York. He also reviewed and signed a private placement investor questionnaire, which he sent to Joseph Stevens in New York.[2] During the approximate six month period his account was at LCP Capital, Cikanek called Inserra about dozens of securities transactions. Similarly, during his six year relationship with Joseph Stevens, Cikanek made numerous telephone calls to Inserra in New York about a myriad of securities transactions. These facts vastly are different from those in the *McTamney* case.

The other authority Cikanek relies upon involves telephone calls made regarding transactions outside New York, not the maintenance of a securities account in New York. The parties in *Forgash v. Paley*, 659 F. Supp. 728 (S.D.N.Y. 1987), *Kimco Exchange Place Corp. v. Thomas Benz, Inc.*, 34 A.D.3d 433 (2d Dep't 2006), and *Milliken v. Holst*, 205 A.D.2d 508 (2d Dep't 1994) all engaged in telephone calls to and correspondence with New York concerning claims that arose out of transactions dealing with real property located outside of New York or contractual obligations to be performed in jurisdictions other than New York. Unlike the out-of-state parties in these cases, the subject matter of Cikanek's correspondence with New York was his property (cash and securities) located in New York.

---

[2]   Notably, Cikanek admits that he recognized that the information he provided in the questionnaire was false. Specifically, Cikanek said that he "perjured" himself by sending the false information to Joseph Stevens. (Cohen Decl., Exhibit B, pp. 6-7; Exhibit E). Cikanek, therefore, fraudulently induced Joseph Stevens into allowing him to invest in a private placement. This fraud on Joseph Stevens alone should be sufficient to confer personal jurisdiction over Cikanek in New York pursuant to CPLR § 302(a)(3).

Finally, Cikanek's reliance upon *Deutsche Bank Securities Inc. v. Montana board of Investment*, 7 N.Y. 3d 65 (2006) is disingenuous. The court in *Deutsche Bank* did not establish market sophistication as a requirement to confer jurisdiction over an out-of-state customer in New York. Rather, the court discussed market sophistication as one factor relevant to the facts of that particular case. Significantly, the court emphasized that the volume of transactions the parties engaged in is imperative to the jurisdictional analysis, stating that "where a defendant 'deals directly with the broker's New York office by phone or mail [or email] in a *number of transactions* instead of dealing with the broker at the broker's local office outside New York, long arm jurisdiction may be upheld.'" *Id.* at 65 (emphasis added) (quoting *Siegel*, NY Prac. § 86 at 152, 4th ed.). Here, Cikanek authorized or ratified hundreds of trades in the accounts over a period of approximately six years by telephone calls to New York.

Based on the foregoing, it is clear that Cikanek engaged in purposeful and systematic business activity in New York and he had fair warning that his activity could subject him to New York jurisdiction. Consequently, personal jurisdiction over Cikanek in New York is proper and the cross-motion to dismiss should be denied.

## III.    TRANSFER OF VENUE FROM THE U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK TO THE NORTHERN DISTRICT OF ILLINOIS IS INAPPROPRIATE

Cikanek's request to transfer venue must be denied because venue in the U.S. District Court for the Southern District of New York is proper. The United States Supreme Court has found that the venue provisions of the FAA are permissive and permit a motion to confirm, vacate, or modify an arbitration award in any district that is proper under the general venue statue. *See Cortez Byrd Chips, Inc. v. Bill Harbert Construction Co.,* 529 U.S. 193 (2000) (holding that the venue provisions of the FAA are permissive). Joseph Stevens' petition to

vacate is before this Court based on diversity jurisdiction, and therefore, the applicable general

venue statue provides that:

> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.

28 U.S.C. § 1391(a)(2). The events giving rise to the claim are the events on which the claim in

arbitration is based. *See, e.g., D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir.

2006) (citing *Cortez Byrd Chips, Inc. v. Bill Harbert Construction Co.*, 529 U.S. 193, 198

(2000)). Here, Cikanek's claim in arbitration was based on the alleged mishandling of his

account (breach of fiduciary duty, negligence, fraud) by Inserra and Joseph Stevens. It is not

disputed that, at all times, these parties were located in the New York. Consequently, venue in

the United States District Court for the Southern District of New York is proper in this case.

The Second Circuit considers several factors in determining a motion to transfer venue

pursuant to 28 U.S.C. § 1014(a). *See, e.g, Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F.

Supp. 2d 474, 477 (S.D.N.Y. 2006) (denying the request to transfer venue). The relevant factors

include: "(1) the locus of the operative facts; (2) convenience of the parties; (3) the convenience

of the witnesses; (4) the location of relevant documents and relative ease of proof; (5) the relative

means of the parties; (6) the availability of process to compel attendance of unwilling witnesses;

(7) a forum's familiarity with the governing law; (8) the weight accorded to plaintiff's choice of

forum; and (9) trial efficiency and the interests of justice based on the totality of the

circumstances." *Id.* "While courts are to consider the above factors, there is 'no rigid formula

for balancing these factors and no single one of them is determinative.'" *Arthur Metzler &*

*Assocs. Consulting Eng'rs, P.C. v. Group Goetz Architects, P.C.*, 01 Civ. 7253, 2002 U.S. Dist.

LEXIS 7540, *11 (S.D.N.Y. April 29, 2002) (denying the request to transfer venue) (quoting

*Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000) (citations omitted). Simple shifting of "inconveniences" is not sufficient to warrant a change of venue. *Lappe v. American Honda Motor Co.*, 857 F. Supp. 222, 230 (N.D.N.Y. 1994) (denying a request by an ill and injured individual to transfer venue stating "although defendants can afford to litigate this matter in either jurisdiction, a 'shifting of inconveniences is not grounds for transfer.'" (citations omitted)).

Cikanek's claim that transfer of venue is necessary because litigating the petition to vacate in New York is financially burdensome for him is fatuous. Petitions to vacate an arbitration award are typically resolved on the papers, and usually are not accompanied by typical litigation expenses associated with discovery, witnesses preparation, and trials. Cikanek may (and actually has) filed all the papers relating to this case electronically, which can be easily and economically done from Illinois. The expenses Cikanek will incur in attorneys fees substantially will be the same whether the case is litigated in New York or Illinois. Cikanek's attorney, Leslie Blau, is admitted to practice before this Court and there is no need to pay local counsel. Since this is a reply to Cikanek's opposition to Joseph Stevens' petition to vacate the arbitration award, the motion to vacate is fully briefed. This Court's decision on the motion should be dispositive and, even if the Court were to require oral argument, Mr. Blau alone would need to travel to New York for one day. The burden imposed by the expense of such travel is minimal. Indeed, it is most likely twenty-fold less than the cost of the cross-motion.

Cikanek's argument that this case should be transferred to the Northern District of Illinois because application of Illinois law is central to Joseph Stevens' claim similarly is without merit. Familiarity with the governing law is given little or no weight in federal courts when determining the transfer of venue. *See, e.g., Am. Eagle Outfitters, Inc.*, 457 F. Supp. 2d at 479. It is

presumed that federal courts are equally capable of applying the laws of other states.  *See, e.g.,*

*Arthur Metzler & Assocs. Consulting Eng'rs, P.C.*, 2002 U.S. Dist. LEXIS 7540 at *17.  This

Court is well-equipped to interpret Illinois law, and therefore, transfer of venue is inappropriate.

## CONCLUSION

Based on the foregoing, Petitioner Joseph Stevens respectfully requests that this Court

grant Joseph Stevens' petition to vacate the arbitration award rendered in Matter of the

Arbitration between David Cikanek and Joseph Stevens & Company, Inc., Kevin Brody,

Leonard Joseph Inserra, and Ross Inserra, NASD Arbitration No. 06-1868.


Respectfully submitted,

Dated: June 28, 2007                    NIXON PEABODY LLP
     New York, New York

By: _____
     Martin P. Russo (MR-4134)
     Alison B. Cohen (AC-7702)
     Tamar Y. Duvdevani (TD-7603)
     437 Madison Avenue
     New York, New York 10022
     Tel:  (212) 940-3000
     Fax:  (212) 940-3111


     Attorneys for Petitioner
     Joseph Stevens & Company, Inc.