IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- X

JOSEPH STEVENS & COMPANY, INC.,

        Petitioner,

vs.                                      Case No. 07 CV 3385

DAVID CIKANEK,                      Hon. Barbara Jones

        Respondent.

--------------------------------------------------------------- X

**RESPONDENT'S REPLY MEMORANDUM IN SUPPORT OF**
**MOTION TO DISMISS AND IN THE ALTERNATIVE FOR TRANSFER**

**I. Introduction**

Respondent, David M. Cikanek ("Cikanek"), submits this Reply Memorandum in further support of his Motion to Dismiss and in response to Petitioner Joseph Stevens & Company, Inc.'s ("Stevens") "Memorandum of Law in Further Support of Motion to Vacate Arbitration Award" ("Stevens' Reply Memo"). This memorandum will:

- Disprove Stevens' assertion that Cikanek has somehow conceded the merits of Stevens' petition.

- Show that Stevens has withheld the complete record below in disregard of its legal duty.

- Show that Stevens' Reply Memo mischaracterizes the facts in order to present this Court with an inaccurate picture of Cikanek's contacts – or more precisely lack of contacts – with the State of New York.

In the alternative, this brief will show transfer of venue should be granted because a weighing of all pertinent factors establishes Chicago as the proper forum for this action.

1

## II. Argument

**A.    Cikanek's Rule 12(b) Motion Tolled His Time to Respond to the Merits**

Stevens tells this Court that Cikanek has conceded on the merits of Stevens' case. Stevens baldly states: "David Cikanek does not even contest the fact that the arbitration panel exceeded its power and acted in manifest disregard of the law…" (Stevens' Reply Memo, p. 1). Stevens later follows with "Cikanek does not dispute that the arbitration award in his favor is the result of arbitrators exceeding their power and manifestly disregarding the law." (Id.)  Moreover, in a June 29, 2007 letter to this Court, Stevens' counsel stated:

> "There is confusion with regard to whether these papers are complete…..Cikanek served a motion to dismiss, which we consider his opposition to our motion to vacate…. Consequently, we believe that the petition and motion to vacate the arbitration award is **fully** briefed." (Emphasis added)

A copy of the letter is attached as Exhibit A.

Stevens' "confusion" is bizarre.  Cikanek's counsel specifically asked Stevens for an extension that Cikanek intended "to answer **or** otherwise move." [1]   A motion to dismiss for lack of jurisdiction suspends the time to answer.  See Fed. R. Civ. P. 12(a)(4). [2]   *Bishop v. Colorado,*

---

[1] On June 8, 2007, Leslie A. Blau, counsel for Respondent, called and e-mailed Alison Cohen, co-counsel for Petitioner, informing her that Cikanek intended to "*answer or otherwise move.*" (Emphasis added) (Blau Decl., July 9, 2007, Exhibit A).  Thus, Stevens' counsel was more than well aware that by moving to dismiss Cikanek was not conceding anything regarding the merits of the petition to vacate.

[2] Under Fed. R. Civ. P. 81(a)(3), the Federal Rules of Civil Procedure apply to proceedings under the Federal Arbitration Act ("FAA"), Title 9, U.S.C., to the extent that matters of procedure are not provided for in the FAA. The FAA does not provide for motions to dismiss for lack of jurisdiction, and so any such motion thus is a motion permitted under Rule 12 of the Federal Rules of Civil Procedure (specifically, Fed. R. Civ. P. 12(b)(4)).   Fed. R. Civ. P. 12(a)(4) states:
>    (4) Unless a different time is fixed by court order, the service of a motion permitted under this rule alters these periods of time as follows:
>       (A) if the court denies the motion or postpones its disposition until the trial on the merits, the responsive pleading shall be served within 10 days after notice of the court's action.

115 F. Supp.2d 1108, 1115 (D. Minn. 2000).    Stevens' petition to vacate the arbitration award is not ready for resolution on the merits.  Cikanek retains his right to address the merits once this Court rules on his motions to dismiss or transfer.

> **B.    Stevens Has Withheld the Complete Record of the Arbitration in Violation of Applicable Case Law**

A party moving to vacate an arbitration award under the Federal Arbitration Act should provide the complete record to the court, "and the failure to offer the entire record leaves the Court unable to exclude the possibility that the award is supported by evidence that the Petitioner has not supplied."  *Paper, Allied-Industrial, Chemical & Energy Workers Intl. Union v. S.D. Warren Co.*, 382 F.Supp.2d 130 at 139 (D. Me. 2005) ("*Paper Union*").  The penalty for supplying the court an incomplete record can be severe.  In a case in which a brokerage firm sought to vacate an NASD arbitration award, District Court Judge Kaplan of this court held that "the lack of a complete record alone is sufficient to require rejection of Commonwealth's [the brokerage firm's] position."  *Commonwealth Associates v. Letsos*, 40 F.Supp.2d 170 at 175 (S.D.N.Y. 1999), *accord, Paper Union* at 141, n. 14).

Stevens' original petition attached limited portions of the record.[3]   Stevens has persisted in this practice even after being advised by Cikanek's counsel.[4]  When it filed its Reply Memo,

---

[3]  For example, Stevens has neither filed the Statement of Answer submitted in the NASD arbitration by Stevens or the other respondents, nor the various motions made in the arbitration (including a request for change in venue to New York, which was denied).  (Sugarman Decl., July 9, 2007, Exhibit A.)

[4]   Stevens has paid for and received a copy of a court reporter's transcript(see Blau Decl., July 9, 2007, Exhibit B).   Cikanek's counsel asked Stevens more than once to supply this Court with the entire record—transcripts and exhibits.  (Sugarman Decl., July 9, 2007, Exhibit A).   Cikanek's counsel told Stevens' counsel:  "I believe that it is **Nixon Peabody's sole responsibility to supply Judge Jones with a complete record** of the hearing--including all exhibits--not just the selected portions you deem helpful to the application to vacate filed by Joseph Stevens & Company.  **There is no legitimate basis for your law firm's refusal to provide the judge with records that you admit you have**."  That refusal forces Mr. Cikanek – who is the Respondent in this vacatur proceeding – to spend

3

Stevens once again presented selected parts of the record and refused to file the entire record with this Court.

Stevens' refusal to supply a full record has permitted Stevens to "cherry pick" portions of the record. This presentation gives a misleading picture of the facts. See ; *Lew Lieberbaum & Co., Inc. v. Randle*, 85 F.Supp.2d 123 at 126 (E.D.N.Y. 2000) (rejecting a petition by a securities broker seeking to vacate NASD arbitration award for filing a self-serving excerpt of the record). Stevens' cherry-picking forces Cikanek to refute via declaration the self-serving and selective facts that Stevens presents. Stevens thereby forces this Court to sift through competing submissions without a full transcript. So long as Stevens refuses to file a complete record, disputes of fact regarding personal jurisdiction – and other factual disputes – should be resolved in favor of Cikanek.

### C. Cikanek Did Not Engage in Transactions Sufficient to Confer Personal Jurisdiction under New York's Long-Arm Statute

Stevens' Reply Memo, supported by attorney Alison Cohen's declaration, sets out a list of alleged "undisputed facts" that supposedly prove Cikanek "transacted business" in New York subjecting him to personal jurisdiction under the New York long-arm statute. Her "facts" are irrelevant or disputed:

#### *1. The Fidelity and LCP Capital Accounts are Irrelevant*

The Stevens' Reply Memo claims that Cikanek's accounts at Fidelity, later transferred to an unrelated entity in New York (LCP Capital), confers jurisdiction over Cikanek.

---

money to obtain records that you have in your possession and should have filed. (Blau Decl., July 9, 2007, Exhibit B) Stevens' counsel, Martin Russo, has refused, asserting that Stevens has no obligation to provide parts of the record that they did not use in their papers. (Sugarman Decl., July 9, 2007, Exhibit A).

4

(Stevens' Reply Memo, at 7). While Cikanek does not dispute that he had accounts with Fidelity in Massachusetts, or that his accounts were transferred to LCP Capital, these facts are irrelevant to the jurisdictional analysis. This is tantamount to arguing that transfer papers become automatic summonses for any future account the customer might have. This argument was rejected by *L.F. Rothschild, Unterberg, Towbin v. McTamney,* 59 N.Y.2d 651, 463 N.Y.S.2d 197, 449 N.E.2d 1275, *aff'd,* 89 A.D2d 540, 452 N.Y.S.2d 630 (1st Dept. 1982), cited in Cikanek's main brief. That case involved a challenge to personal jurisdiction by a brokerage customer who "previously had an account at Merrill Lynch where Karanzalis had been his account executive." Just as in this case, the account executive, Karanzalis, moved to another unrelated firm. The second firm alleged long-arm jurisdiction based upon the customer's transactions with Merrill Lynch (just as Stevens does here with respect to Fidelity and LCP Capital).

The court rejected this argument. The court stated, "[t]his previous account is unrelated to the cause of action alleged herein and would, therefore, have no bearing on whether defendant is subject to "long-arm" jurisdiction pursuant to CPLR 302."

The same is true here. Cikanek's prior activity with a different brokerage firm is completely irrelevant to the long-arm statute.[5]

---

[5] Stevens' Reply Memo next claims as an "undisputed fact" that "in opening his account with LCP Capital, Cikanek signed a customer account agreement and sent it to Inserra in New York." (Stevens' Reply Memo, at 7). This so-called "fact" is irrelevant, in any event, since it involves another firm. However, this "undisputed fact" is not supported by the section of the record cited by the Alison Cohen Declaration. Cikanek merely testified that "I would have had to [fill out a new account form at LCP] in order to be an investor." (Cohen Decl., Exhibit B, p. 9). The truth is the new account form was never introduced in evidence at the hearing. Moreover, nowhere does the transcript section referenced by Alison Cohen show that Cikanek sent an LCP customer account agreement to New York.

A second "undisputed fact" alleged in the Stevens' Reply Memo as to LCP Capital is that "Cikanek engaged in voluminous trading in the LCP account" in which he lost $600,000. Again, this "fact" is irrelevant since it involves another firm, but it is also a complete mischaracterization of the trading activity at LCP Capital. The reality is that any "voluminous trading" which took place at LCP was not "engaged in" by Cikanek at all. Rather, as

   2.   *The "Fact" That Cikanek Filled Out*
        *Paperwork and Transferred His Account.*

Stevens tells this Court that it is an undisputed fact that Cikanek filled out "paperwork" and transferred his account to Stevens. Stevens, however, does not identify the paperwork or supply copies to the Court. Although Cikanek testified that he believed he signed new account agreements, Stevens was never able to produce copies of those executed agreements. (Sugarman Decl., June 15, 2007, ¶ 3.) There is, therefore, nothing in the record before this Court which supports this claim. It may just as well be possible that Cikanek's LCP broker Ross Inserra filled out and signed Cikanek's name on the "paperwork."

   3.   *The "Fact" That Cikanek "Constantly"*
        *Called Inserra "to Discuss the Trading."*

The Stevens' Reply Memo also tells this Court that Cikanek "constantly" called Inserra "to discuss the trading," as if Cikanek knew what was going on before a trade was made and was involved in the investment decisions. This "undisputed fact" presents a wholly inaccurate picture of what actually happened. Cikanek was <u>not</u> involved in any of the investments decisions in his accounts. Inserra, who has since been indicted and convicted for securities fraud, exercised complete discretion and control. On the very same page cited by Stevens appears the following dialogue:

   Q   Was he [Inserra] calling you before he would decide to purchase a stock like Global Net or something of that sort and would he call you before he decided to sell a stock?

   A:  No.

---

set forth in the Statement of Claim and as testified to by Cikanek, it was all completely unauthorized. (Martin Russo Decl. April 28, 2007, Exhibit I, page 3) (Cohen Decl., Exhibit A, page 64, lines 8-16).

6

> Q: How would you even have a know [sic] or find out about the status of your account?
>
> A: By calling him up and asking what was happening.

(Cohen Decl., Ex. A, page 64, lines 8-16).

Cikanek was not transacting business in his accounts; Inserra was. These after-the-fact telephone calls were not "transacting business" within the meaning of the long-arm statute.

*4. The "Fact" That Cikanek "Purposely and Systematically"*
<u>*Sent $60,000 to Stevens and Sent "More Money" to Invest Elsewhere*</u>

Two final "facts" are cited in the Stevens' Reply Memo to support jurisdiction. The first is that Cikanek, over the course of the years that his accounts were at Stevens, sent a lump sum of $60,000 to Stevens. The second is that later on, money was transferred to Inserra to purchase a private placement—another sham investment. These facts do not help Stevens either.

As to any money Cikanek may have sent to firms or individuals (i.e., Inserra) other than Stevens, Cikanek has already pointed out that such activities are irrelevant to this Court's analysis of "long arm" jurisdiction. (See discussion above of the *L.F. Rothschild* case.)

Stevens then claims that the $60,000 that Cikanek sent while his accounts were still at Stevens is a fact that shows he "purposefully availed himself of the privilege of conducting activities within New York." Stevens Reply Memo at 10. Stevens essentially asks this Court to ignore the *Deutsche Bank Securities* case, 7 N.Y.S. 3d 65, 818 N.Y.S.2d 164, 850 N.E.2d 1140 (2006), arguing that, "[t]he court in *Deutsche Bank* did not establish market sophistication as a requirement to confer jurisdiction over an out-of-state customer in New York." (Stevens Reply Memo at 8.)

Market sophistication may not be a "requirement" for jurisdiction, but *Deutsche Bank Securities* holds an investor's sophistication, or lack thereof, is something the courts of New York can and should consider in determining long-arm jurisdiction. This case presents an extreme example. The very testimony cited by Stevens to show that Cikanek sent in the $60,000 tells the pathetic story:

> Q: Did there come a time, if you recall, after you came to Joseph Stevens that your account was basically wiped out, no longer had any money in it, if you recall?
>
> A: Yes, and I can't recall the date and I asked Ross what are we going to do and – or – and he said, well, we need $60,000. I said, Ross, you lost all this money and I don't have money to be investing, but he finally convinced me to send the money and I sent the money.

(Cohen Decl., Exhibit A, page 72, lines 15-24).

The above makes clear that Cikanek sent $60,000 to Inserra because Inserra told him to do so. Nowhere in that excerpt does Cikanek testify Inserra told him why he needed $60,000 or what he intended to do with it. Yet, Stevens claims the above constitutes "purposeful business activity in New York" and "fair warning" that Cikanek would be subject to New York jurisdiction.

No stronger case than this can be advanced to illustrate the principle laid out last year in *Deutsche Bank Securities* that sophistication – or lack of it – is an extremely important factor in deciding whether or not to dismiss an action for lack of personal jurisdiction. Cikanek was a retired Illinois janitor who was "basically wiped out" and who was convinced to send in $60,000. According to Stevens, it is a fact that Cikanek "purposefully and systematically" engaged in business in New York State when he sent in that money. This Court should reject this final "fact" and hold that Cikanek did not "transact business" within the meaning of CPLR

8

302 when he capitulated to the greed of a broker who was later indicted and convicted for securities fraud.

     **D.**    **If this Court Determines to Exercise Personal Jurisdiction over Cikanek, It Should Transfer this Action to the District of Illinois**

There seems to be no dispute between the parties as to the factor that a court should weigh on a motion to transfer venue. Stevens Reply Memo., at 11. A court should weigh the following factors: "(1) the locus of the operative facts; (2) convenience of the parties; (3) the convenience of witnesses; (4) the location of relevant documents and relative ease of proof; (5) the relative means of the parties; (6) the availability of process to compel attendance of unwilling witnesses; (7) a forum's familiarity with governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interests of justice based on the totality of the circumstances." *Arthur Metzler & Associates Consulting Engineers, P.C. v. Group Goetz Architects, P.C.*, 01 Civ 7253, 2002 U.S. Dist. LEXIS, *11 (S.D.N.Y. April 29, 2002).

Cikanek is a retired janitor in poor health who lives in Chicago, who has never traveled to New York, and who lost the majority of his net worth as a result of acts of fraud by Stevens' employees. (Declaration of David M. Cikanek in Support of Motion to Dismiss ("Cikanek Decl."), ¶¶ 1, 3, 14, 15.) After an arbitration hearing in Chicago, Cikanek received an arbitration award that includes punitive damages. Stevens now wants Cikanek to defend his arbitration award in New York. The arbitration hearing – the *only* event in dispute – took place in Chicago. Stevens' choice of forum should be accorded little weight because there is no connection between New York and the events in dispute. In addition, a transfer of venue would further the interests of justice because Stevens has far more resources to litigate in a distant forum than does

9

Cikanek.

1. **This Matter Should be Adjudicated in the Northern District of Illinois Because the Arbitration Hearing Took Place in Chicago.**

The "core determination" on motions to transfer venue is the locus of operative facts. *Viacom Intl., Inc. v. Melvin Simon Prods., Inc.* 774 F.Supp. 858, 868 (S.D.N.Y. 2001). This Court has held that in cases brought to vacate arbitration awards, the locus of operative facts is where the arbitration hearing took place because the only relevant issues pertain to the arbitrators' actions. Thus, the action to vacate should be adjudicated in the forum *Crowe Construction Co. v. Jeffrey M. Brown Associates, Inc.*, No. 01 Civ. 3839, 2001 U.S. Dist. LEXIS 1392, at *7 (S.D.N.Y. August 30, 2001) (transferring an action to vacate an arbitration award to the forum where the arbitration hearing occurred). This Court should likewise transfer this action to the Northern District of Illinois because the arbitration hearing took place in Chicago, the locus of operative facts.

2. **Stevens' Choice of Forum Should Be Given Little Weight in this Court's Analysis.**

This Court has held that when there is no connection between the disputed events and plaintiff's initial choice of forum, "little weight should be given to the plaintiff's choice of forum." *Crowe Construction Co.*, 2001 U.S. Dist. LEXIS 1392, at *16 (quoting *Watkins v. Harvard University*, No. 89 CV 2602, 1989 U.S. Dist. LEXIS 19122, at *2 (E.D.N.Y. Nov. 3, 1989)). As discussed in Part 1, the only disputed events in an action brought to vacate an arbitration award are the arbitrators' actions. *Id.* at *11. Since there is no connection between Stevens' chosen forum and the events in dispute, Steven's choice of forum should be given little weight.

10

**3.     Litigation in a Distant Forum Would be Far More Burdensome to Cikanek.**

The relative means of the parties is an important consideration on motions to transfer venue. *Gottdiener v. D.H. Blair & Co., Inc.*, 462 F.3d 95, 107 (2nd Cir. 2006). Stevens does not dispute the disparity in resources between Stevens and Cikanek and rightly so: Stevens is an NASD registered broker-dealer, while Cikanek is a retired janitor who lost the majority of his net worth as a result of actions by Stevens' agents. (Cikanek Decl., ¶¶ 1, 15.) Instead, Stevens asserts that there will be no oral argument and the location of the forum therefore makes no difference to Cikanek. Stevens, however, provides no support for its assertion that there will be no oral argument.

In the event that this Court schedules an oral argument, Cikanek would need to reimburse his attorney for air fare, cab fare and potentially lodging expenses.[6] These expenses would be unduly burdensome for Cikanek. Since Cikanek lost most of net worth as a result of Stevens' acts of fraud, the relative means of the parties should weigh heavily in this Court's analysis.

---

[6] In this action, Cikanek will be required any resulting expenses including travel. (Blau Decl., July 9, 2007, ¶ 1.)

11

**Conclusion**

For the reasons stated, this Court should dismiss this case for lack of personal jurisdiction or in the alternative transfer this case to the U.S. District Court for the Northern District of Illinois.

Respectfully Submitted,

/s/ _____Leslie A. Blau_____
Leslie A. Blau, Esq.
BLAU & BONAVICH
140 South Dearborn, Suite 1610
Chicago, IL  60603-5202
(312) 443-1600   fax- 1665

Renan Sugarman, Esq.
(pending admission *pro hac vice*)
30 North LaSalle, Suite 1530
Chicago, IL  60602
(312) 578-9411  fax-9431


Of Counsel
Paul Malmfeldt
Ari R. Madoff

Dated: July 9, 2007